## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

SHANE COOPER                                                                  PLAINTIFF
ADC #113431

V.                              5:17CV00117 JM/JTR

ASHIA JAMES, CO, Tucker Unit;
CLIFFORD SIMS, Lieutenant,
Tucker Unit; and
RAMONA HUFF, Assistant Head of
Medical Dept., Tucker Unit                                               DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent
to United States District Judge James M. Moody Jr. You may file written objections
to all or part of this Recommendation. If you do so, those objections must: (1)
specifically explain the factual and/or legal basis for your objection; and (2) be
received by the Clerk of this Court within fourteen (14) days of the date of this
Recommendation. If you do not file objections, Judge Moody can adopt this
Recommendation without independently reviewing all of the evidence in the record.
By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Plaintiff Shane Cooper ("Cooper") is a prisoner in the North Central Unit of
the Arkansas Department of Correction ("ADC"). He has filed a *pro se* § 1983

Complaint and three Amended Complaints alleging that Defendants violated his constitutional rights while he was incarcerated in the ADC's Tucker Unit. *Docs. 2, 5, 15 & 47.*

During 28 U.S.C. § 1915A screening, the Court dismissed Cooper's claims against Defendants Deputy Warden Michelle Gray, ADC Director Wendy Kelley, and Inmate Charles Sanders, because his allegations against them failed to state a claim for relief. *Docs. 6 & 8.* On January 5, 2018, the Court: (1) denied Motions to Dismiss filed by Defendants Lieutenant Clifford Sims ("Sims") and Assistant Head of Medical Department Ramona Huff ("Huff"); and (2) granted Defendant Correctional Officer Ashia James's ("James") Motion to Dismiss Cooper's claim for injunctive relief against her, but allowed his damages claim against her to proceed. *Docs. 49 & 53.* Finally, on March 19, 2018, the Court dismissed Cooper's claims against Defendant Medical Department Administrator Tim Fuloon and Defendant Does due to lack of service. *Doc. 64.*

Thus, Cooper's only remaining claims are against Defendants James, Sims, and Huff. Those claims are as follows: (1) on December 29, 2016, James and Sims denied him medical care for facial and eye injuries he received after being assaulted by another inmate; and (2) Huff failed to take corrective action after reading his grievances complaining about the lack of medical care for his injuries. As a result of

the delay in Cooper receiving medical care for his injuries, he alleges that he has suffered "visual and nerve damage" to his right eye.

Defendants James and Sims have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Facts, and a Reply, arguing that Cooper's claims against them should be dismissed because he failed to exhaust his administrative remedies as to the inadequate and delayed medical care claims he is now asserting against them. *Docs. 54, 55, 56 & 65.* Defendant Huff has filed a separate Motion for Summary Judgment, a Brief in Support, a Statement of Facts, and a Reply, which argues that Cooper's claim against her also should be dismissed based on his failure to exhaust his administrative remedies. *Docs. 57, 58, 59 & 81.* Cooper has filed Responses to both Motions, along with Briefs in Support and a Statement of Facts. *Docs. 61, 62, 63, 77 & 78.* Thus, the issues are joined and ready for disposition.[1]

## II. Discussion

The Prison Litigation Reform Act ("PLRA") calls for prisoners to exhaust

---

[1]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

their administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully and

4

properly comply with the exhaustion requirements *of the incarcerating facility* before filing suit.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver; (2) a "Step Two" formal grievance raising that claim; and (3) an appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director. *Doc. 54, Ex. B at 5-13* (ADC Adm. Dir. 14-16 § IV(E) through (G)). The ADC's exhaustion policy requires that, in connection with each claim, an inmate must "*specifically name each individual involved*," and must include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." *Id., Ex. B at 4-6* (§§ IV(C)(4) & (E)(2)) (emphasis added). The grievance forms themselves repeat these instructions to ensure prisoners are aware of them. *Doc. 59, Ex. A at 21* ("[B]e specific as to the complaint, date, place, name of personnel involved and how you were affected."). Finally, the ADC's exhaustion policy cautions prisoners that, if they "fail to name all parties during the grievance process … their lawsuit or claim [may be] dismissed by the court … for failure to exhaust against all parties." *Doc. 54, Ex. B at 5* (§ IV(C)(4)).

Here, the parties *agree* that Grievance TU-17-00011 is the only grievance that Cooper fully exhausted in connection with the claims he is asserting in this case.

5

*Doc. 54, Ex. C; Doc. 59 ¶ 12; Doc. 77 ¶ 3; Doc. 78 ¶ 1.* In his informal resolution (Step One), dated January 3, 2017, Cooper stated:

> On 12-29-16 I was assaulted, *proper protocol was not followed as I did not receive any medical attention*. As a result of the assault [by another prisoner] my right eye and cheek were swollen and bruised, my eye was swollen shut on 12/30/2016 to the point I could not leave the barracks. I am suffering constant headaches and dizziness. My swelling has went down and I am in pain. My eye has blood in the white part. Sgt. Hudson was notified on 1-2-2017 to *no medical attention given* and checked and seen I was telling the truth.

*Doc. 54, Ex. C at 3* (emphasis added).

On January 4, 2017, Defendant Huff responded to Cooper's informal resolution and noted that he was "seen 1-2-17 [by an infirmary nurse] and referred to the provider [a CCS physician]."[2] The same day, Cooper filed a formal unit-level grievance (Step Two). *Id.* The next day, January 5, 2017, a CCS physician saw Cooper and evaluated his injuries. *Doc. 78, at 5.*

On January 23, 2017, a non-party deputy warden issued a decision on Cooper's Step Two formal grievance, stating:

> According to information obtained from Sgt. Hudson, on 12/[29]/16, you were taken to the infirmary by security, photos were taken and you were placed on the ward. On 1/2/17 you advised Sgt. Hudson that you were never seen on 12/[29]/16, therefore, you were escorted to the infirmary [on January 2, 2017], your eye was checked out and you were scheduled to see the Doctor. Therefore, I consider the issue in this grievance resolved.

---

[2]CCS is the medical provider for the ADC.

*Doc. 54, Ex. C at 2.*

Cooper then appealed to the ADC Deputy Director stating that he was "not seen by medical staff in a clinical manner" until January 5, 2017.[3] *Id.* On March 1, 2017, the ADC Deputy Director responded:

> After reviewing your appeal and all supporting, I find medical records indicate you were assaulted on 12/29/2016, by another inmate at east gate; brought to the infirmary *but not seen by medical* [an infirmary nurse] until 1/2/2017 at approx. 3:50 PM. Due to the evidence submitted in your appeal, I find policy was not followed. Per policy, after your altercation with another inmate you should have been seen immediately [b]y medical. Due to the evidence submitted in your appeal, I find your appeal *with merit.*

*Id. at 1* (emphasis added).

The Court must now determine whether, in Grievance TU-17-00011, Cooper properly exhausted his administrative remedies as to the § 1983 claims he is asserting against James, Sims and Huff. It is undisputed that: (1) none of those Defendants were named or described in Grievance TU-17-00011; and (2) nothing in that grievance mentions or describes the inadequate or delayed medical care claims that Cooper is now asserting against those three Defendants in this action.

---

[3] Apparently, Cooper did not consider being "checked out" by an infirmary nurse on January 2, 2017, as counting toward being "seen by medical staff in a clinical manner."

**A.     Did Cooper Exhaust His Available Administrative Remedies as to the Claims He Is Now Asserting Against James and Sims?**

In his § 1983 Complaint and Amended Complaints, Cooper alleges that, after he was assaulted by another inmate on December 29, 2016, someone ordered that he be placed in a holding cell in the prison infirmary. According to Cooper, approximately fifteen minutes after being taken to an infirmary holding cell, Sims ordered James to return Cooper to his barracks, without being seen by any medical personnel. Cooper also contends that James failed to report that Cooper was not seen by the medical staff on December 29, which further delayed him receiving medical treatment for his injuries. *Doc. 2, at 4; Doc. 5, at 2-3.*

In Grievance TU-17-00011, *Cooper failed to name or otherwise identify* (title, rank, physical description, etc.) *who* did not follow "proper protocol," which resulted in him "not receiv[ing] any medical attention" on December 29, 2016. Similarly, during the grievance appeal process, Cooper failed to clarify that the target of his grievance was anyone other than "Sgt. Hudson," *the only person he identified in Grievance TU-17-00011*. Finally, neither in Grievance TU-17-00011, nor at any later point in the grievance appeal process, did Cooper ever clarify that his failure to follow "proper protocol" claim[4] was actually an inadequate and delayed medical

---

[4]It is well settled that prisoners do not have a constitutional right for officers to comply with internal prison rules or regulations. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); Gardner v. Howard, 109 F.3d 427, 430 (8th Cir.1997).

care claim against the two guards who returned him to his cell on December 29, 2016, without being seen by infirmary medical staff. Thus, on its face, Grievance TU-17-00011 did not comply with the ADC's grievance policy, which required Cooper to identify the "specif[ic] name [of] each individual involved" *and* to make a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses."[5]

On January 23, 2017, a deputy warden responded to Grievance TU-17-00011. In her Response, she noted that, after talking with "Sgt. Hudson," *the only person Cooper had named at Step One and Step Two of the grievance process*, it appeared: (1) Cooper was taken to the infirmary on December 29, 2016 (a detail that Cooper had not included in his grievance papers) but was not seen by the infirmary medical staff on that day; and (2) After Cooper notified Sgt. Hudson, on January 2, 2017, that his injuries had not yet been evaluated by the infirmary medical staff, he was

---

[5]At Step One and Step Two, Cooper alleged only that, immediately after the December 29, 2016 assault, "proper protocol was not followed" and he "did not receive any medical attention." He named only "Sgt. Hudson," a guard he spoke with on January 2, 2017. He did not identify in any way the individuals who were responsible for him not being seen by medical staff on December 29. He also failed to describe anything about the alleged misconduct that he now attributes to James and Sims, *i.e.,* after he had been waiting for fifteen minutes in a holding cell in the prison infirmary on December 29, they decided to return him to his barracks, without being evaluated by any medical staff, and then failed to report that he was not seen by medical staff for the injuries he sustained from an attack by another inmate. Thus, *nothing* in Cooper's Step One and Step Two grievance papers asked the ADC to investigate or review anything related to the actions of James or Sims, or the inadequate or delayed medical care claims he is now asserting against them in this action. Rather, his only claim was the oblique statement that "proper protocol was not followed as [he] did not receive any medical attention" after he was assaulted.

9

promptly taken to the infirmary where "your eye was checked out and you were scheduled to see the Doctor." Based on her investigation of the incident, *as it was described by Cooper in his grievance*, the deputy warden's Response stated that she now "consider[ed] the issue in this grievance resolved."

In appealing the denial of this grievance to the ADC Deputy Director, Cooper did *not* provide *any* new or additional facts about either the nature of his claim or at least a description of James and Sims, the two guards he now claims were responsible for him receiving inadequate and delayed medical care. Specifically, Cooper said *nothing* about being in an infirmary holding cell for fifteen minutes, then being returned to the barracks by two allegedly "unknown" guards (whom he could have at least described), which resulted in him receiving inadequate and delayed medical treatment for his eye and facial injuries. Instead he only stated that he "was not seen by medical staff [a CCS doctor]" until January 5, 2017, without making any effort to explain the inadequate and delayed medical care claim he intended to assert against the two unnamed and allegedly "unknown" guards.

In his decision, the ADC Deputy Director concluded that, because Cooper "was brought to the infirmary [immediately after the assault on December 29, 2016] but *not seen by medical*" until January 2, 2017 [when he was "checked out" by an infirmary nurse and referred to see a CCS physician], "policy was not followed" and

10

his grievance was "with merit." While he found that Cooper should have been seen by infirmary medical staff on December 29, 2016, the ADC Deputy Director did not attribute fault to anyone because Cooper's grievance papers only complained about "proper protocol" not being followed, without making any claims against anyone. Given the vague nature of Cooper's claim that "proper protocol" was not followed, the ADC Deputy Director did *not* have any reason to believe he needed to investigate whether any specific person had provided Cooper with inadequate and delayed medical care on December 29, 2016. Thus, the ADC was deprived of the opportunity to investigate the claim Cooper is now asserting against James and Sims, *for the first time,* in this § 1983 action.[6]

In *Burns v. Eaton,* 752 F.3d 1136 (8th Cir. 2014), Burns alleged that, after he was pepper-sprayed by an ADC prison guard, defendant White (who did *not*

---

[6]If Cooper had at least described the guards involved (James and Sims) and made it clear he was asserting an inadequate and delayed medical care claim against them, it would have allowed ADC officials to learn the identities of James and Sims and interview them about why they returned Cooper to his cell without allowing him to have his injuries evaluated by the infirmary medical staff. Those interviews might have revealed that James and Sims returned Cooper to his cell because he decided his injuries did not require medical treatment or because he did not want to be seen by an infirmary nurse. Similarly, those interviews might have revealed that James and Sims flagrantly disregarded Cooper's need for medical care and that they both should be disciplined for their misconduct. Regardless of what those interviews might have revealed, it would have allowed the ADC to use the results of its investigation to try to resolve Cooper's grievance without him filing a lawsuit, which goes to the central purpose for requiring prisoners to identify or describe *the targets* of their grievance and the *claims* they are asserting against those targets. Here, Cooper's grievance papers were so vague, as to both the targets of his grievance and the nature of his claims, that the ADC was deprived of an opportunity to conduct a meaningful investigation.

administer the pepper spray) was deliberately indifferent to his serious medical needs by refusing to allow him to wash off the pepper spray. In Burns's grievance about the incident, he did *not* name White or allege that anyone had prevented Burns from washing off the pepper spray. Because "the ADC was not asked to evaluate the conduct of White or the distinct § 1983 claims first asserted by Burns in his [§ 1983] complaint," the Court concluded that Burns's § 1983 claim against White asserted "a new grievance … completely unexhausted." *Id.* at 1141-42. Thus, Burns's § 1983 claims against White were dismissed based on his failure to exhaust his administrative remedies.

More recently, in *Townsend v. Murphy,* No. 17-2783, 2018 WL 3626504 (8th Cir. July 31, 2018), Townsend filed a § 1983 action against three ADC prison officials (Murphy, Romine and White) claiming that they were responsible for him working with chlorine gas, without proper training and safety gear. In his grievance, however, Townsend named only his direct supervisor, Murphy. The Eighth Circuit concluded that, by failing to name the other two officials (Romine and White), Townsend had "limited [the ADC's] ability to investigate his claim and provide relief." *Id.* at *2. Thus, the Court held that Townsend had failed to properly exhaust his administrative remedies against Romine and White:

> [T]he preprinted informal-complaint form instructed Townsend to "be specific as to the complaint, date, place, [and] name of personnel

involved." Despite these instructions, Townsend made no mention of Romine or White, nor of the specific factual allegations that would later appear in his federal [§ 1983] complaint. He did not even hint that anyone other than Murphy was responsible for his exposure to chlorine gas. Having failed to include any information about Romine or White in his informal complaint, Townsend did not exhaust his remedies against them.

*Id.* at *3.

Here, just as in *Burns* and *Townsend,* Cooper's grievance did not name, describe or otherwise identify James or Sims, or allege any facts about their alleged misconduct on December 29, 2016 that supports the § 1983 claim he is asserting against them in this action. Thus, the ADC was not given the opportunity to investigate the matter, and James and Sims are now in the position of defending a claim that is being asserted for the first time in this § 1983 action.

In his Responses, Cooper seeks to avoid summary judgment on the exhaustion issue by arguing that: (1) grievance forms were not made available to him at the time of the incident; and (2) he did not know the names of James and Sims at the time he filed his grievance and there was "zero help" in finding out who they were.[7] *Docs.*

---

[7]Cooper also argues that Terri Grigsby's Declaration, submitted in support of James and Sims's Motion for Summary Judgment, refers to an individual named "Scott" and thus has nothing to do with whether Cooper exhausted his administrative remedies against James and Sims. *Doc. 61, at 2; see Ex. 54, Ex. A.* In their Reply, James and Sims state that, although the Declaration has several erroneous references to "Mr. Scott," it otherwise clearly contains facts relevant to Cooper's § 1983 claims against them. *Doc. 65, at 3.* To clarify that issue, they filed a corrected Declaration that removes all references to "Scott." *Id., Ex. E.*

*61, 62 & 63.*

Cooper's assertion that grievances were not available to him immediately after the incident is immaterial to the exhaustion issue. It is undisputed that, within three or four days of the incident, Cooper obtained a grievance form and used it to begin the grievance process on January 3, 2017, well within the time for filing a timely grievance pursuant to ADC policy.

Similarly, even if Cooper was unable to identify James and Sims *by name* when he filed his grievance, this did *not* prevent him from describing them by job title, rank, physical description, or even the time and place of their alleged misconduct. Nor did the lack of knowledge of their names prevent him from asserting in his grievance that, fifteen minutes after he was placed in a holding cell awaiting medical attention on December 29, 2016, two "unknown guards" were responsible for returning him to the barracks, which resulted in him receiving inadequate and delayed medical care for the injuries he received from being attacked by another prisoner. Cooper did none of these things, which deprived the ADC of the opportunity to conduct an administrative investigation of the matter.

Finally, Cooper makes the conclusory assertion that he was unable to learn the names of James and Sims because, "if asked questions about other officers or actions dealing with a constitutional violation [ADC officers/employees] … will

14

give inmates false information, lies and I don't know statements." *Doc. 63, at 2.*[8] Even if the Court accepts that allegation as being true, it fails to explain why Cooper did not at least give a general description of James and Sims *and* explain the nature of the claim he was making against them for failing to allow his injuries to be evaluated by the infirmary staff on a timely basis.

Importantly, at no point in the grievance process did Cooper allege that prison officials were thwarting his efforts to determine the identities of James and Sims. In fact, the *first time* Cooper alleged that prison officials prevented him from learning the identities of James and Sims was in his unsworn Responses to James and Sims's Motion for Summary Judgment. *Doc. 62, at 2; Doc. 63, at 2.* He did not make this allegation in his Complaint, his three Amended Complaints, or his two Responses to Motions to Dismiss filed by James and Sims.[9] *See Docs. 2, 5, 15, 30, 44 & 47.* The

---

[8] In *Ross v. Blake,* 136 S. Ct. 1850, 1859-60 (2016), the Court held that a prison administrative remedy is "unavailable," thereby excusing the exhaustion requirement, when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

[9] In his Responses to those Motions to Dismiss, Cooper asserted that: (1) Sims knew Cooper had been assaulted and had seen Cooper's injuries "when ordering him back to his housing"; and (2) James had "seen and talked to Plaintiff about his injuries, knowing that he had not been seen [by medical] and her not doing anything." *Docs. 30 & 44.* These Responses indicate that Cooper had direct contact with both Sims and James immediately after the December 29 assault and denial of medical care, yet still failed to include any allegations about their alleged conduct, or make any attempt to identify or otherwise describe them at any point during his administrative grievance proceedings.

absence of any supporting documents, coupled with his failure to directly raise this issue at any time during the grievance process or earlier in this § 1983 action, seriously undermines his argument and makes it appear that he manufactured it in an attempt to defeat summary judgment on the exhaustion issue.[10]

Because Cooper did *not* properly exhaust his available administrative remedies regarding the inadequate and delayed medical care claims he is now asserting against James and Sims, the Court concludes that they are entitled to summary judgment. Accordingly, Cooper's § 1983 claims against James and Sims should be dismissed, without prejudice, for failure to exhaust administrative remedies. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought to court.").

**B.    Did Cooper Exhaust His Available Administrative Remedies as to the Claim He Is Now Asserting Against Huff?**

In his Third Amended Complaint, Cooper alleges that Huff answered his

---

[10]This case is readily distinguishable from the recent Eighth Circuit decision in *Townsend v. Murphy, supra.* There, the prisoner stated, in a sworn declaration, that a sergeant had *incorrectly* advised him not to file a formal grievance, and that he was repeatedly denied access to the library, which contained the only available copy of the administrative directive setting forth the requirements of the ADC grievance policy. *Townsend, supra at *3.* The Court correctly noted that Townsend's *unchallenged* declaration of being misled by a sergeant about the need to file a formal grievance, and being prevented from independently verifying that information in the prison library, was sufficient to establish that the prison's formal grievance procedure was "unavailable," which relieved him of his duty to exhaust an unavailable administrative remedy. *Id.*

16

grievance on January 4, 2017, but still made him wait until the next day, January 5, to be seen by a doctor for the injuries he sustained in the December 29, 2016 assault.[11] *Doc. 47*.

In Grievance TU-17-00011, Cooper did *not* mention Huff or identify her as someone who had any involvement in him receiving inadequate or delayed medical care after the December 29, 2016 assault. The fact that she reviewed and responded to Cooper's Step One informal resolution, on January 4, 2017, is insufficient to make her a party to the grievance. The Eighth Circuit has made it clear that being "the reader" or "decision maker" of a grievance is *not* sufficient to make such an individual a party to the "grieved incident." *Champion v. Akins,* 498 Fed. Appx. 670, 670 (8th Cir. 2013); *see also Rowe v. Norris,* 198 Fed. Appx. 579, 580 (8th Cir. 2006) (ADC deputy director's denial of grievances was insufficient to impose § 1983 liability on him). Instead, to satisfy the PLRA's exhaustion requirement, a prisoner must file a grievance specifically alleging that the "reader" or "decision maker" was personally "involved in the grieved incident." *Champion,* 498 Fed. Appx. at 670; *see*

---

[11]According to the record, Huff responded, on January 4, 2017, to Cooper's Step One informal resolution in Grievance TU-17-00011, stating that he had been "seen 1-2-17 [by an infirmary nurse] and referred to the provider [referring to a CCS physician whom Cooper saw the next day, January 5, 2017]." On January 6, 2017, Huff responded to a second informal resolution, in Grievance TU-17-00016, regarding Cooper not being seen by the doctor on January 4, 2017, even though he was on the "doctor call list" for that day. *Doc. 78, at 4.* It is undisputed that Cooper failed to exhaust Grievance TU-17-00016.

*Waller v. Kelley,* 956 F. Supp. 2d 1007, 1013-14 (E.D. Ark. 2013) (because the prisoner's grievances did not mention the corrective inaction claim that he was asserting against one of the defendants, "ADC officials were deprived of the opportunity to investigate and correct any problems associated with the way [that defendant] was reviewing and responding to Plaintiff's medical grievances"). Thus, Huff's limited role in reviewing and promptly responding to Grievance TU-17-00011 does not provide Cooper with a basis for claiming he has properly exhausted his administrative remedies as to the corrective inaction claim he is now asserting against her. *See Champion,* 498 Fed. Appx. at 670.

Cooper contends that he "followed up on TU-17-00011" by filing a second grievance, TU-17-00016, in which he specifically named Huff. *Doc. 78, at 2 & 4.* However, Huff provides undisputed documentation that Cooper's final grievance appeal of TU-17-00016 was *rejected* because he did not "complete Attachment III or IV with [his] name, ADC# and/or date," as required by the ADC's grievance procedure rules. *Doc. 81, Ex. B.* Because Cooper did *not* comply with the necessary procedural requirements to complete the final step of the exhaustion process regarding Grievance TU-17-00016, and the ADC did *not* consider that grievance on the merits because of the procedural deficiency, Grievance TU-17-00016 was not fully exhausted and cannot be used to support the viability of the § 1983 claim that

Cooper is now asserting against Huff.

Cooper did not file and fully exhaust a grievance identifying Huff and describing the claim he is now attempting to assert against her in this action. Thus, the Court concludes that Huff is entitled to summary judgment on that claim, and recommends that the claim be dismissed, without prejudice, for failure to exhaust administrative remedies.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      The Motion for Summary Judgment filed by Defendants Ashia James and Clifford Sims (*Doc. 54*) be GRANTED, and Cooper's claims against them be DISMISSED, without prejudice, for failure to exhaust.

2.      Defendant Ramona Huff's Motion for Summary Judgment (*Doc. 57*) be GRANTED, and his claim against her be DISMISSED, without prejudice, for failure to exhaust.

Dated this 10th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

19